### AUFERHEIDE, Plaintiff-Appellant, v. THAL, Defendant-Appellee.

Ohio Appeals, Second District, Montgomery County.

No. 1847.   Decided June 21, 1945.

P. L. Birt, Dayton, A. K. Meck, Dayton, for plaintiff-appellant.

Landis, Ferguson, Bieser & Greer, Dayton, for defendant-appellee.

## OPINION

By HORNBECK, P. J.

This case is before us on appeal on questions of law from the decision of the Common Pleas Court of Montgomery County, Ohio, wherein the Court directed the jury to return a verdict in favor of the defendant.

The issues may be gathered from the allegations of the amended petition and the answer thereto. Briefly, the amended petition states that on November 14, 1942, and previous thereto, the defendant was the owner of and in control of a building located on East Fifth Street in the City of Dayton, Ohio; that the basement of said building was rented by the defendant to and used by the Booth Furniture Company, and that the first and second floors were rented by the defendant to The Gilbert Shoe Company, which company in turn sublet the second floor to Alfred S. Daneman, doing business as the "Allied Furniture Company"; that said Daneman rented the fourth floor from the defendant; it is alleged that the defendant was in control of the elevator and passageway to and from the same; that a power freight elevator had been installed in the rear of said building for the use of defendant's tenants, and was in use on said date; that plaintiff was an employee of the Allied Furniture Company and it was a part of his duties to operate said elevator between the first and fourth floors of said building.

It is further asserted that on November 14, the plaintiff thought that said elevator was at the first floor landing and attempted to enter what he thought was the said elevator cage but said elevator had, without his knowledge, been raised to the second floor, and was at the second floor and that there was no gate or other obstruction to bar his entrance into the elevator shaft, and that he fell into said elevator pit and injured himself as described.

It is alleged that his injuries and the damage resulting therefrom were caused by the negligence of the defendant in four particulars, which may be epitomized—

1. That the defendant maintained said elevator for the use of the tenants, and that it was in such a wornout and defective condition that the gate thereto at times did not close when the elevator was moved up and down from one floor to another.

2. That said elevator was not equipped at the first floor landing with self closing gates and that said failure to so equip it, was in violation of the Code of the State of Ohio.

3. The defendant, in violation of the requirements of the Code, failed to have said elevator lighted.

4. The defendant, in violation of such requirement, failed to have the landing edges of the threshold of the first floor and the car platform plainly visible.

Plaintiff asks judgment in the sum of $25,000.00.

## ANSWER TO AMENDED PETITION.

The defendant, Joseph Thal, for his answer, admits that he owns the building; that the first and second floors were rented to The Gilbert Shoe Company, who in turn sub-let the second floor to the Allied Furniture Company, the plaintiff's employer. Defendant also admits that the plaintiff fell and received some injury, and denies all other allegations, especially the allegations of negligence charged against him, but says that the plaintiff's injuries were due solely to the plaintiff's own negligence; that the plaintiff, in attempting to board the elevator in this building without first determining that the elevator was at the landing on the first floor, and in walking into a place where he could not see what was before him, was chargeable with negligence which contributed to cause his injury.

Before the case had been submitted to the jury, a motion was made by the defendant for an instructed verdict. First, on the ground that the plaintiff had failed to show any negligence on the part of the defendant in connection with the maintenance or operation of the elevator, all the testimony indicating that while the defendant owned the property, he was out of possession and control insofar as the elevator was concerned.

Second, on the ground that the plaintiff's own testimony has clearly raised a showing of contributory negligence on his own part, which has not been refuted in any manner by any other testimony of the plaintiff. After this matter was argued by counsel to the court, the court sustained the motion.

Errors complained of are (1) refusal to permit plaintiff to introduce testimony that the defendant carried insurance on the elevator, upon the issue of the control of the elevator by the defendant; (2) that there was error in permitting the defendant to tell the jury that one of the lessees, partially using the elevator, carried elevator insurance; (3) in allowing the defendant to make other statements as to insurance; (4) in allowing counsel for defendant to suggest that plaintiff received compensation for his injuries from the Industrial Commission and (5) received expenses from the Industrial Commission; (6) (7) & (8) that the court erred in

sustaining the motion for a directed verdict, overruling plain-tiff's motion for a new trial, and entering judgment against plaintiff; (9) in not allowing plaintiff to offer proof that there is a type of elevator gate that will prevent the accident claimed to have occurred; and (10) that the Court erred in not allowing proof of a former accident through the operation of the elevator.

Without going into further detail, it would appear in addition to those things that are admitted in the pleadings that the plaintiff was engaged by The Allied Furniture Company and operated the elevator for it in moving furniture between the first floor and the fourth floors. It appeared that on the day of the accident, at lunch time, plaintiff brought the elevator to a stop on the first floor and before leaving the second floor, turned out the lights there and thereby also the small light in the elevator which had no controlling switch in the elevator. There was no light at the elevator platform. It appears that the elevator was used by the tenants on the several floors one, at least, of which rented of the defendant. The approach to the elevator was from a loading platform at the rear of the store room, by a narrow passageway between articles stacked on either side of the passageway.

The gates which were intended automatically to close the elevator shaft when the elevator was removed therefrom had, at times, failed to function properly.

When plaintiff reached the position with respect to the elevator shaft where he thought the gates were in position, they were not there having stuck when the elevator was moved to the second floor. Plaintiff stepped off the platform into the elevator pit, fell and injured himself.

Errors Nos. 6 and 7—

The major and controlling assignment of error relates to the action of the trial court in directing a verdict against plaintiff because of his contributory negligence. In our judgment, upon the evidence, in its entirety, there was an issue of fact on this question which should have been submitted to the jury for determination.

The two leading cases in Ohio cited are: **Flury v Central Publishing House, 118 Oh St 154,** third syllabus:

"The testimony of a plaintiff invitee, in an action for negligence, that from a lighted room he opened a closed metal-covered sliding door, was confronted with **total darkness** beyond the door, that he then stepped into **such total darkness,** to his injury, **without any knowledge, information or investigation as to what such darkness might conceal,** raises

an inference of negligence on his part which, **in the absence of any evidence tending to refute such inference,** will require a directed verdict for the defendant."

**McKinley v Niederst, 118 Oh St 334,** second syllabus:

"The testimony of a plaintiff, tenant in an apartment house housing several tenants, with halls and stairways in common, that she passed out of her apartment into a hallway in **total darkness,** with full knowledge of the existence of a stairway leading downward only a few steps from the door of her apartment, and proceeded forward in the direction of such stairway seeking to descend the same and fell to her injury, raises an inference of negligence on her part, which, **in the absence of any evidence tending to refute such inference,** justifies the trial court in directing a verdict in defendant's favor." (Emphasis ours)

The emphasis directs attention to the differentiating facts between the cited cases and those appearing in our case.

The plaintiff in his employment, under instructions, was required to turn out the light on the second floor which operation also turned out the light in the elevator proper. There was no light controlled by a separate switch in the elevator and no light on the landing platform. Pursuant to instructions, the plaintiff on entering the areaway leading to the elevator, closed the doors to avoid creating drafts throughout the building. The plaintiff regularly entered the building and proceeded through the areaway to the elevator and knew the landmarks and how to make his progress to the elevator with the little light he had to guide him and by objects with which he was familiar. The entrance to the elevator into which the plaintiff moved upon opening the doors was not completely dark. In both cited cases the injured person stepped into pitch darkness. When the plaintiff opened the door there was enough light for him to see the elevator shaft and the gates, had they been in place, and through the shaft, on to the other side of the pit. He testifies he saw the landing platform and also what, in the dim light, he thought were the gates in front of the elevator. What he actually observed was an object, an elevator gate, which had been placed there but a short time before, on the opposite side of the opening to the shaft which could have been mistaken for the gates at the entrance to the elevator on the side from which the

plaintiff would enter. In the situation with which he was confronted he took other precautions which on other occasions had been sufficient to protect him. The fact that, if he had observed many other and different precautions he might have avoided the accident is not sufficient to support the conclusion that, as a matter of law, he was contributorily negligent. It is quite true that there was ample support for a determination by the jury that his negligence contributed to cause his injury but that right should not have been taken from it.

Assignment No. 1—the court should have admitted the insurance policy which the defendant carried to indemnify him for damages which he might be required to pay by reason of the improper condition of the elevator. This was a circumstance, along with other testimony, reflecting upon the question whether or not the defendant exercised control over the elevator, the landing platform and the entrance thereto, particularly, at the first floor.

Assignment No. 8—Although a close question, there was an issue of fact whether or not defendant exercised some joint control over the elevator at the place where the plaintiff was injured.

Under the contract between the Gilbert Shoe Co., lessor of defendant, and the Allied Furniture Company, it agreed "to make all repairs in the interior of the building * * * and to indemnify lessor, The Gilbert Shoe Co., from damages * * *, by reason of any repairs or improvements which may be made by said lessee on said premises but that it would not make any major repairs without the written consent of lessor". The extent to which the Allied Furniture Company made repairs on the elevator, the landing platform and equipment is not developed with particularity in the record. At the time this contract was made The Booth Furniture Company was not a tenant in the building and afterwards was rented the basement and possibly an upper floor by the defendant. He states in his testimony that at the time the Booth Furniture Company's lease was under consideration he became impatient with the Gem City Elevator Company and made a deal with the Otis Elevator Company to do the work on the elevator. Thus, notwithstanding the contract between the Gilbert Shoe Company and the Allied Furniture Company, the defendant leased to the Booth Furniture Company the basement which necessitated its use of the elevator. If it be conceded, which is in doubt, that the Allied Furniture Company agreed with Gilbert unconditionally to maintain the landing platform

and the gates at the first floor, the jury might well have found that the defendant elected to exercise some control over this equipmtnt at least at the first floor where the elevator was loaded and unloaded. The question whether or not he was in joint control, insofar as the plaintiff is concerned is factual.

Assignment No. 9—it was the obligation of those who provided the elevator in defendant's building to make use of the best and most improved machinery and devices in general practical use in freight elevators such as was required by the tenants in the Thal building. The plaintiff did not develop nor proffer testimony of sufficient weight to make a question for the jury whether or not the gates in use on the elevator were such as was required to be provided under the law. The evidence, as offered, on this subject was properly refused.

Assignment No. 4 is well taken.

Other assignments are not well made.

Judgment reversed and cause remanded.

MILLER, J., concurs, GEIGER, J., dissents.

GEIGER, J., dissenting.

Without going into details, but after having read the record in its entirety and all the pleadings filed in this case, I arrive at the conclusion that the court was not in error in instructing a verdict in favor of the defendant. The plaintiff had sufficient knowledge of the operation of the elevator and was in charge of such operation, without any control of the owner. He also had knowledge that the elevator at times failed to respond as it should, in that the gates did not fall back into a protecting posititon after the elevator cage had left one floor for another. But all this was known to the plaintiff. Had he availed himself of the information that he had and recognized the possibility that the elevator was moved from the floor where he had left it half an hour before, the accident would not have occurred. See: **Flury v Century Publishing House, 118 Oh St 154**, Syl. 3; **McKinley v Niederst, 118 Oh St 334**, Syl. 2.

The fact that the owner may have sought additional protection through an additional policy did not put him in control of the operation of the elevator, which remained with the several tenants of the building using the same.

## ON APPLICATION FOR REHEARING