OPINION
{¶ 1} Appellant, Edith Carlie, appeals from the Belmont County Court of Common Pleas' decision granting Appellee, Ohio Valley Mall, summary judgment. For the foregoing reasons, the trial court's judgment is hereby affirmed.
 {¶ 2} Appellant filed her complaint naming as defendants The Cafaro Company, Ohio Valley Mall, and Phar-Mor, Inc. on October 27, 2000. Appellant alleged that she suffered personal injuries as a result of a trip and fall incident that occurred on or about October 29, 1998. The Cafaro Company and Phar-Mor, Inc. were subsequently dismissed from the case, thus leaving Ohio Valley Mall as the sole defendant on appeal.
 {¶ 3} Appellant, a Florida resident, was in Ohio visiting her friend Helen Coch ("Coch") at the time of the incident. Appellant had never been to this Phar-Mor parking lot prior to the incident. (Carlie Depo., p. 30.) Coch pulled her car into the first handicap parking space to accommodate Appellant. (Carlie Depo., p. 14.) Appellant had a handicap sticker since she was unable to walk long distances as a result of a heart condition and a history of poor circulation and clotting in her legs. (Carlie Depo., p. 14.)
 {¶ 4} Appellant fell when she tripped over a curb that was situated between the first handicap parking space and the driving lane adjacent to the Phar-Mor store at the Ohio Valley Mall. Appellant exited the passenger's side of Coch's vehicle and was walking toward the Phar-Mor entrance. (Carlie Depo., p. 22.) Coch's vehicle was pulled forward into the space, and Appellant walked around the rear of the vehicle. (Carlie Depo., pp. 18, 24.) The back of Coch's vehicle extended beyond the curb on which Appellant tripped. (Carlie Depo., p. 22.) Thus, Appellant would not have tripped and fallen had she walked straight across the rear of Coch's vehicle toward the sidewalk. (Carlie Depo., p. 25.)
 {¶ 5} Appellant was not looking down at the time of the fall; she was looking ahead at Coch. (Carlie Depo., pp. 25-26.) The fall occurred at approximately 6:30 p.m., and the natural light was near dark. (Carlie Depo., pp. 13, 26.) The artificial lights in the parking lot were illuminated at the time of her fall. (Coch Depo., p. 14; Carlie Depo., p. 27.) However, Coch testified that it may not have been dark enough for her to have her car headlights on. (Coch Depo., p. 14.)
 {¶ 6} Appellant stumbled over the end of the curb. (Carlie Depo., p. 37.) The curb on which she tripped was outlined in white paint. (Carlie Depo., p. 26; Defendant's Exhibits 1, 3, 4, and 5.)
 {¶ 7} Appellant alleged that Ohio Valley Mall negligently maintained the lighting in the parking lot and negligently permitted, maintained or positioned a curb in or near a handicap parking space.
 {¶ 8} Ohio Valley Mall filed a motion for summary judgment on April 30, 2002. Appellant filed a response in opposition and Ohio Valley Mall filed a reply. The trial court granted Appellee summary judgment on January 16, 2003.
 {¶ 9} Appellant filed her timely notice of appeal on February 11, 2003.
 {¶ 10} Appellant's sole assignment of error asserts:
 {¶ 11} "The trial court abused its discretion and committed error in granting the motion for summary judgment."
{¶ 12} Contrary to the abuse of discretion language used in Appellant's assignment of error, a decision to grant summary judgment is reviewed de novo. Doe v. Shaffer (2000),90 Ohio St.3d 388, 390, 738 N.E.2d 1243; Dresher v. Burt (1996),75 Ohio St.3d 280, 662 N.E.2d 264. We may not defer to the trial court's decision. Morehead v. Conley (1991),75 Ohio App.3d 409, 412, 599 N.E.2d 786.
{¶ 13} In order to grant a motion for summary judgment, the court must find that, construing the evidence most strongly in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 375 N.E.2d 46. A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. Williams v. First UnitedChurch of Christ (1974), 37 Ohio St.2d 150, 151, 309 N.E.2d 924.
 {¶ 14} Appellant's complaint is based on a negligence claim. In order to establish actionable negligence, one must prove, first, that the defendant has a duty; second, that the defendant breached the duty; and finally, that the plaintiff's injury was a proximate result of the breach of that duty. Menifee v. OhioWelding Prod., Inc. (1984), 15 Ohio St.3d 75, 77,472 N.E.2d 707.
 {¶ 15} It is undisputed that Appellant was a business invitee at the time of her fall. A business owner owes invitees a duty of ordinary care to maintain the premises in a reasonably safe condition. Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474. The business owner has a duty to warn its invitees of latent or hidden dangers. Id. Invitees have a duty to take reasonable precautions to avoid dangers that are patent or obvious. Sidle v. Humphrey (1968),13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, paragraph one of the syllabus. Owners or occupiers of property owe no duty to warn invitees of open and obvious dangers on the premises. Id.
 {¶ 16} The open and obvious doctrine, if applicable, eliminates the duty to warn and completely bars any negligence claims. Armstrong v. Best Buy, 99 Ohio St.3d 79,788 N.E.2d 1088, 2003-Ohio-2573, at ¶ 5. The rationale is that the open, obvious nature of the risk itself serves as a warning, and therefore the owner may reasonably expect that individuals will discover those risks and take appropriate measures to protect themselves. Simmers v. Bentley Constr. Co. (1992),64 Ohio St.3d 642, 644, 597 N.E.2d 504.
 {¶ 17} In Appellant's response to Appellee's motion for summary judgment, she claimed that there was a genuine issue of material fact as to whether she had a duty to constantly look downward. However, the Ohio Supreme Court in Armstrong stressed that the open and obvious doctrine arises from a lack of duty in the first place and that it has nothing to do with the comparative negligence of the plaintiff in encountering the alleged danger. Armstrong, 99 Ohio St.3d 79, 788 N.E.2d 1088,2003-Ohio-2573, at ¶ 8.
 {¶ 18} In applying Armstrong to the instant case, Appellant correctly points out some factual distinctions. Unlike the instant case, the plaintiff in Armstrong, supra, had visited the store on other occasions. Appellant had never shopped at this store before. (Carlie Depo., p. 30.)
 {¶ 19} Further, the plaintiff in Armstrong testified that had he looked down, he would have seen the shopping cart guardrail on which he tripped. Armstrong, 99 Ohio St.3d 79,788 N.E.2d 1088, 2003-Ohio-2573, at ¶ 16. Appellant initially stated that she would have seen the curb had she been looking down. Thereafter, however, she indicated that she was unable to unequivocally state whether she would have seen the curb that evening if she had been watching where she was walking. (Carlie Depo., pp. 26-27, 30.)
 {¶ 20} While Appellant's testimony was somewhat inconclusive on this fact, Coch testified that the parking lot lights were adequate on the date of the incident and that the curb was clearly discernable. (Coch Depo., p. 19.) Coch's testimony was not contradictory to Appellant's. Coch testified:
 {¶ 21} "Q. As you got out of the car and you're standing there between the curb and the car, was the curb clearly visible to you?
 {¶ 22} "A. Let's say I knew the curb was there, so I didn't pay any attention to it.
 {¶ 23} "Q. Well, let me ask you this way: If you look down —
 {¶ 24} "A. If I was looking, yes, I couldn't have missed it.
 {¶ 25} "Q. It was very visible to you if you looked down?
 {¶ 26} You're shaking your head `yes'?
 {¶ 27} "A. Yes." (Coch Depo., p. 26.)
 {¶ 28} Appellant presented no evidence to the contrary. She insists, however, that her own uncertainty about seeing the curb was a sufficient basis on which to preclude summary judgment.
 {¶ 29} As in Armstrong, supra, there are several photographs depicting the curb on which Appellant tripped. After reviewing the photographs supplied by the parties, the Supreme Court in Armstrong found that, "as a matter of law, the rail in question was visible to all persons entering and exiting the store. Thus, the rail presented an open-and-obvious danger."Armstrong, 99 Ohio St.3d 79, 788 N.E.2d 1088, 2003-Ohio-2573, at ¶ 16.
 {¶ 30} In the instant matter, Appellant identified the photographs, labeled defendant's exhibits one, three, four, and five, as photographs that she took of the incident scene the day after her fall. (Carlie Depo., pp. 27-36.) While these photographs were not taken at the same time of the evening or in the same light that existed at the time of Appellant's fall, Appellant and Coch both testified that the photographs accurately depicted the scene of Appellant's fall. (Carlie Depo., pp. 27-36; Coch Depo., pp. 16-17.) Defendant's exhibit one was marked with an X to identify the place of Appellant's trip and fall. (Carlie Depo., p. 29.)
 {¶ 31} Reviewing these photographs in conjunction with Appellant's and Coch's testimony, the curb in question was readily apparent. The curb was clearly marked with a white paint outline. (Carlie Depo., p. 34.) Further, in reviewing the photographs, the curb appears to be constructed of concrete, whereas the roadway and parking spaces appear slightly darker and are likely made of asphalt or aged blacktop. The white outline around the curb appears to be several inches wide. The outline appears to be approximately the same thickness of the lines that demarcate the parking spaces and the lines that separate the opposing lanes of travel on the adjacent roadway. Based on the foregoing, the curb on which Appellant tripped and fell was an open-and-obvious condition as a matter of law.
 {¶ 32} In addition, while Coch testified that the parking lot lighting was adequate, Appellant asserted that it was not. The Ohio Supreme Court in Jeswald v. Hutt (1968),15 Ohio St.2d 224, 239 N.E.2d 37, held that, "[o]ne who maintains a private motor vehicle parking area, for the accommodation of those he serves in a professional or business way, is generally under no legal obligation to illuminate the same at night * * *." Id. at paragraph one of the syllabus.
 {¶ 33} "[Further,] no precedent exists to establish that once some light is provided, the owner of the premises has a duty to provide `adequate' lighting. Meilink v. AAA Northwest Ohio
(Dec. 4, 1998), Lucas App. No. L-98-1139, unreported. The amount of light in an area is an open and obvious condition. Id. Darkness itself constitutes a sign of danger, and the person who disregards a dark condition does so at his or her own peril.Sanders v. Anthony Allega Contractors (Dec. 30, 1999), Cuyahoga App. No. 74953, unreported." Bionci v. Boardman Local Schools
(June 18, 2001), 7th Dist. Nos. 00 CA 6, and 00 CA 83
 {¶ 34} Based on the testimony and the photographs, there is no evidence of record that Appellee had any reason to believe its invitees, including Appellant, would not have seen the curb and protected themselves against a fall.
 {¶ 35} Further, if the parking lot was poorly lit, Appellant had an even greater obligation to watch where she was walking. She admits that she was not, and that she likely or possibly would have seen the curb had she been looking down. Regardless, Appellee had no duty to provide more or different lighting at the scene. As such, Appellee was appropriately awarded summary judgment.
 {¶ 36} Based on the foregoing, the trial court's decision is hereby affirmed.
Judgment affirmed.
Vukovich and DeGenaro, JJ., concur.